UNITED STATES DISTRICT COURT

Northern District of California

| | |
|---|---|
| DON LAU,<br><br>                Plaintiff,<br>   v.<br>MERCEDES-BENZ USA, LLC,<br><br>                Defendant.<br>_____/ | No. CV 11-1940 MEJ<br><br>**ORDER DENYING DEFENDANT'S MOTION TO COMPEL ARBITRATION**<br><br>**Re: Docket Number 16** |

## I. INTRODUCTION

Don Lau ("Plaintiff" or "Mr. Lau") brings this lawsuit against Defendant Mercedes-Benz USA, LLC ("Defendant" or "MBUSA") alleging a violation of the Song-Beverly Consumer Warranty Act. Compl. at ¶¶4-17, Dkt. No. 1. Pending before the Court is Defendant's Motion to Compel Arbitration ("Motion") against Plaintiff. Dkt. No. 16 ("Mot."). In its Motion, Defendant requests that, pursuant to the arbitration clause contained within the Retail Installment Sale Contract ("RISC"), the Court compel arbitration of Plaintiff's claims and dismiss this lawsuit. Mot. at 16. The Court conducted a hearing on October 27, 2011. After consideration of the parties' briefs, oral argument, and controlling authorities, the Court **DENIES** Defendant's Motion.

## II. BACKGROUND

### A. Procedural Background

On April 21, 2011, Mr. Lau initiated this lawsuit by filing a Complaint against Mercedes-Benz USA, LLC. Dkt. No. 1. On May 13, 2011, Defendant filed a timely response. Dkt. No. 6. On August 18, 2011, Defendant then filed the instant Motion to Compel Arbitration. Dkt. No. 16.

### B. Factual Background

The relevant facts, taken from Plaintiff's Complaint and the parties' briefs, are as follows. Mr. Lau is a California citizen who purchased a motor vehicle manufactured by Defendant and sold

at one of Defendant's authorized retailers. Compl. ¶5. Defendant Mercedes-Benz USA, LLC is a Delaware corporation with its principal place of business in New Jersey. *Id.* at ¶2.

At some point before November 15, 2007, Mr. Lau visited Mercedes Benz of Walnut Creek ("Seller" or "dealership") in Walnut Creek, California to purchase a motor vehicle. Opp'n at 6, Dkt. No. 19. During this visit, Mr. Lau selected the vehicle and negotiated a price with the Seller, but did not purchase the car. *Id.* On November 15, 2007, Mr. Lau returned to the dealership to execute the purchase contract. *Id.* He was presented with a form Retail Installment Sale Contract ("RISC") which contained pre-printed terms. Opp'n at 6; Decl. of Jon D. Universal Ex. A, Dkt. No. 18. Particularly, the RISC contains an arbitration clause, which is mentioned in two locations on the RISC. Universal Decl. Ex. A. The first instance is on page one, set off in the preceding line to the right of Mr. Lau's signature and reads:

> YOU AGREE TO THE TERMS OF THIS CONTRACT. YOU CONFIRM THAT BEFORE YOU SIGNED THIS CONTRACT, WE GAVE IT TO YOU, AND YOU WERE FREE TO TAKE IT AND REVIEW IT. YOU ACKNOWLEDGE THAT YOU HAVE READ BOTH SIDES OF THIS CONTRACT, INCLUDING THE ARBITRATION CLAUSE ON THE REVERSE SIDE, BEFORE SIGNING BELOW. YOU CONFIRM THAT YOU RECEIVED A COMPLETELY FILLED-IN COPY WHEN YOU SIGNED IT.

*Id.* The second is located on page two of the RISC under a bolded title and reads:

> **ARBITRATION CLAUSE**
> **PLEASE REVIEW – IMPORTANT – AFFECTS YOUR LEGAL RIGHTS**
>
> 1. EITHER YOU OR WE MAY CHOOSE TO HAVE ANY DISPUTE BETWEEN US DECIDED BY ARBITRATION AND NOT IN COURT OR BY JURY TRIAL.
>
> 2. IF A DISPUTE IS ARBITRATED, YOU WILL GIVE UP YOUR RIGHT TO PARTICIPATE AS A CLASS REPRESENTATIVE OR CLASS MEMBER ON ANY CLASS CLAIM YOU MAY HAVE AGAINST US INCLUDING ANY RIGHT TO CLASS ARBITRATION OR ANY CONSOLIDATION OF INDIVIDUAL ARBITRATIONS.
>
> 3. DISCOVERY AND RIGHTS TO APPEAL IN ARBITRATION ARE GENERALLY MORE LIMITED THAN IN A LAWSUIT, AND OTHER RIGHTS THAT YOU AND WE WOULD HAVE IN COURT MAY NOT BE AVAILABLE IN ARBITRATION.

*Id.* The arbitration clause goes on further to state the requirements to compel arbitration:

> Any claim or dispute, whether in contract, tort, statute, or otherwise (including the interpretation and scope of the arbitration clause, and the arbitrability of the claim

or dispute), between you and us or our employees, agents, successors or assigns, which arise out of or relate to your credit application, purchase or condition of this vehicle, this contract or any resulting transaction or relationship (including any such relationship with third parties who do not sign this contract shall, at your or our election, be resolved by neutral, binding arbitration and not by a court action. . . . You expressly waive any right you may have to arbitrate a class action.

*Id.*

Mr. Lau alleges that the sales representative presented him with the RISC and instructed him where to sign on page one of the agreement. Decl. of Don Lau ¶4, Dkt. No. 19-1. Mr. Lau also alleges that during the twenty to thirty minutes spent signing the RISC, the sales representative did not inform him that the agreement contained an arbitration clause nor that he could negotiate any of the pre-printed terms, including the arbitration clause. Lau Decl. ¶¶4-9.

Over the course of the next several years, Mr. Lau experienced numerous problems with the vehicle. Compl. ¶9. Due to Defendant's inability to repair the vehicle and unwillingness to provide Plaintiff with a replacement, Mr. Lau filed this lawsuit alleging a breach of the implied warranty of merchantability and implied warranty of fitness. Compl. ¶¶10-11. Defendant now seeks to enforce the arbitration clause and to dismiss this suit. Mot. at 1.

### III. DISCUSSION

**A. Legal Standard**

Section 2 of the Federal Arbitration Act ("FAA") makes arbitration agreements "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The Act places arbitration agreements on equal footing with other contracts and created a federal policy in favor of arbitration. *Circuit City Stores, Inc. v. Adams*, 279 F.3d 889, 892 (9th Cir. 2001). Allowing parties to design an arbitration process tailored to their dispute allows for efficient, streamlined procedures. *AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740, 1749 (2011).

In determining the validity of an arbitration agreement, federal courts apply state law contract principles. *Circuit City*, 279 F.3d at 892. Thus, general contract defenses grounded in state law, such as fraud, duress, or unconscionability, can render unenforceable an agreement to arbitrate. *Id.* However, more specific contract defenses which apply only to arbitration or that derive their meaning

3

from the existence of an arbitration agreement cannot be used to invalidate such agreements. *Concepcion*, 131 S. Ct. at 1746.

Section 3 of the FAA requires a court to stay litigation of arbitral claims until such arbitration "has been had according to the terms of the agreement." 9 U.S.C. § 3. If the litigants are already in federal court, section 3 allows them to invoke the arbitration agreement made enforceable by section 2. *Arthur Andersen LLP v. Carlisle*, 129 S. Ct. 1896, 1902 (2009). Because section 3 adds no substantive restriction to section 2, state contract law is applicable to determine which agreements are enforceable under section 3. *Id.* As a result, traditional state law contract principles allow non-parties to an arbitration agreement to enforce its terms through "assumption, piercing the corporate veil, alter ego, incorporation by reference, third-party beneficiary theories, waiver and estoppel." *Id.* (internal quotations omitted).

In this case, Mr. Lau asserts that MBUSA cannot enforce the arbitration agreement because it lacks standing as a non-signatory to the contract, and that the agreement is otherwise unconscionable. Opp'n at 9, 13. Because Mr. Lau is a California resident, the purchase agreement was signed in California, and the car dealership was an authorized retailer in California, this Court will look to California contract law to determine whether Defendant has standing and, if so, whether the agreement to arbitrate is enforceable. *See Shannon-Vail Five Inc. v. Bunch*, 270 F.3d 1207, 1211 (9th Cir. 2001) (in a diversity of citizenship case, Restatement § 188 governs the choice of law for a contract dispute).[1]

**B.     Standing**

Mr. Lau contends that Defendant has failed to establish that it has standing to enforce the arbitration agreement pursuant to section 3 of the FAA because it has not shown that it was an agent of the Seller, a third-party beneficiary of the RISC, or covered under the text of the arbitration clause. Opp'n at 9-13. Defendant counters that the arbitration clause is broad enough to cover Mr. Lau's

---

[1] Restatement § 188(2) provides five factors to guide a choice of law determination: (1) the place of contracting; (2) the place of negotiation of the contract; (3) the place of performance; (4) the location of the subject matter of the contract, and (5) the domicil, residence, nationality, place of incorporation and place of business of the parties.

4

1  breach of warranty claim, that Mr. Lau is equitably estopped from denying Defendant's enforcement
2  of the arbitration agreement, and that a principal-agency relationship exists between it and the Seller.
3  Mot. at 13-15.

4        As a general rule, only signatory parties to an arbitration agreement may enforce it. *Rowe v.*
5  *Exline*, 153 Cal. App. 4th 1276, 1284 (2007). However, the courts have recognized fives theories
6  pursuant to which a non-signatory may seek to enforce an arbitration clause:(1) incorporation by
7  reference; (2) assumption; (3) agency; (4) veil-piercing/alter ego; and (5) estoppel. *Boucher v.*
8  *Alliance Title Co., Inc.*, 127 Cal. App. 4th 262, 268 (2005); *Metalclad Corp. v. Ventana Envtl.*
9  *Organizational P'ship*, 109 Cal. App. 4th 1705, 1716-18 (2003). Here, Defendant contends it has
10 standing to enforce the arbitration agreement under equitable estoppel and agency theories. Mot. at
11 13-15.

12       Defendant first argues that because Mr. Lau's claims arise from terms of the RISC, he is
13 equitably estopped from repudiating the arbitration agreement or preventing Defendant from seeking
14 to enforce it. Mot. At 14. Specifically, Defendant contends that Mr. Lau is both relying on the terms
15 of the RISC for his own legal standing and measure of damages, and basing his claim on the vehicle's
16 condition, which is explicitly mentioned in the RISC. Reply at 3, Dkt. No. 20. Plaintiff, however,
17 maintains that this lawsuit is not based in the RISC, but stems from breach of the express warranty
18 provided by Defendant. Opp'n at 11. Plaintiff thus asserts that because the RISC is not essential to
19 the lawsuit, Defendant's equitable estoppel argument is inapposite. The Court agrees with
20 Defendant.

21       Under the doctrine of equitable estoppel, "[a] party may be estopped from asserting that the
22 lack of his signature on a written contract precludes enforcement of the contract's arbitration clause
23 when he has consistently maintained that other provisions of the same contract should be enforced to
24 benefit him." *Boucher*, 127 Cal. App. 4th at 269 (internal quotations omitted). This doctrine thus
25 prevents a party from honoring a commitment to arbitrate only when advantageous and
26 circumventing it when no advantage can be gained. *Metalclad Corp.*, 109 Cal. App. 4th at 1714. A
27 non-signatory defendant may invoke its right to compel a signatory plaintiff to arbitrate when the
28

**UNITED STATES DISTRICT COURT**
**For the Northern District of California**

1  claims against the non-signatory are "'intimately founded in and intertwined' with the underlying
2  contract obligations." *Id.* at 271-72. In essence, the focus is placed on the claims asserted by the
3  plaintiff, such that if a signatory plaintiff relies on contractual terms in its cause of action against a
4  non-signatory defendant, the plaintiff is equitably estopped from repudiating the arbitration clause
5  within the agreement. *Id.* at 272.

6  In this case, Mr. Lau's breach of express warranty claim is "intimately founded in and
7  intertwined" with the underlying purchase agreement. In his Complaint, he alleges that MBUSA
8  "issued an 'express warranty' to [him] in which, *inter alia*, [MBUSA] undertook to preserve or
9  maintain the utility or performance of the subject vehicle." Compl. ¶8. The issuance of the express
10 warranty by Defendant stems from Mr. Lau's purchase of the subject vehicle. Thus, without the
11 RISC, the legal relationship between MBUSA and Mr. Lau – necessary for Mr. Lau to have standing
12 to enforce his legal rights – would not exist. Any breach of express warranty claim is therefore
13 tethered to the RISC. In his Opposition, Mr. Lau asserts that he is seeking to "unwind the entire
14 RISC" on the ground that Defendant failed to properly conform his vehicle to warranty. Opp'n at 11.
15 Although Plaintiff seeks to rescind of the RISC, he must nevertheless rely on its execution in the fist
16 instance to properly claim a breach of express warranty. In fact, Mr. Lau conceded during oral
17 argument that he must rely on three terms in the RISC to prosecute his breach of warranty claim: (1)
18 the "Buyer," term, which provides him standing to bring the claim; (2) the "Total Sale Price," terms,
19 which serves as a measure of restitution damages; and (3) the "Date of Sale," term, which shows that
20 the manufacturer's warranty was triggered. This further militates in favor of a finding that Plaintiff's
21 breach of express warranty claim is founded in and intertwined with the RISC, which contains the
22 arbitration agreement. Accordingly, even though Plaintiff may be seeking to rescind the RISC, he
23 cannot preclude the enforcement of specific provisions in the RISC, while simultaneously arguing for
24 the enforcement of other terms which benefit him. *See Boucher*, 127 Cal. App. 4th at 269. Plaintiff
25 is therefore equitably estopped from challenging Defendant's standing to enforce the arbitration
26 agreement.

27 Second, Defendant argues that it has standing to enforce the arbitration agreement because of
28

6

1 the agency relationship that exists between it and the dealership. Mot. at 15. Specifically, Defendant
2 contends that under the Song-Beverly Act, repairs under the warranty are performed by the
3 authorized dealer on behalf of the manufacturer, which, in turn, creates a principal-agency
4 relationship. *Id.*

The Court agrees with Defendant. Even though a defendant is not a party to an arbitration agreement, California law allows the non-signatory to enforce the agreement under the equitable principle of agency. *Boucher*, 127 Cal. App. 4th at 268; *Westra v. Marcus & Millichap Real Estate Inv. Brokerage Co., Inc.*, 129 Cal. App. 4th 759, 765 (2005). When an agency relationship exists between the non-signatory party and one of the parties to the arbitration agreement, the non-signatory may invoke the agreement if equity demands a duty to arbitrate. *Westra*, 129 Cal. App. 4th at 765. Furthermore, the Song-Beverly Act requires every manufacturer to establish a repair facility in this state to service the express warranty. Cal. Civ. Code § 1793.2(a). Here, MBUSA has agreed with the Seller that they will perform the repairs on all vehicles, necessary to bring MBUSA in compliance with Song-Beverly. The Seller thus functions as Defendant's agent in ensuring that the vehicle conforms to the express warranty within a reasonable number of attempts. *See id.*; *Ibrahim v. Ford Motor Co.*, 214 Cal. App. 3d 878, 888-89 (1989) (treating a manufacturer and its authorized repair facilities as a single entity for purposes of determining whether a manufacturer has been given a reasonable number of repair attempts). Thus, in light of the agency relationship that exists between MBUSA and the Seller, MBUSA may enforce the arbitration agreement.

Based on the above, the Court holds that MBUSA has standing as a non-signatory party to the purchase agreement to enforce the terms of the arbitration clause under the theories of equitable estoppel and principal-agency relationship. Accordingly, the Court turns to Mr. Lau's challenge to the enforceability of the arbitration agreement.

**C.  Unconscionability**

In his Opposition, Plaintiff argues that even if MBUSA has standing to enforce the arbitration agreement, the Court should deny the motion because the arbitration agreement is unconscionable and thus unenforceable. Opp'n at 14. Defendant counters that under the Supreme Court's decision in

7

*AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740 (2011), the FAA requires courts to honor arbitration agreements in accordance with the parties' expectations and that the arbitration clause in this case is neither procedurally nor substantively unconscionable. Mot. at 8.

In *Concepcion*, the plaintiffs entered into a cellular telephone agreement with AT&T Mobility, which provided for arbitration of all disputes in an individual capacity. *Id.* at 1744. After receiving free phones as advertised, the plaintiffs were then charged a sales tax based on the phone's retail value. *Id.* The plaintiffs filed a putative class action against AT&T alleging false advertising and fraud by charging a sales tax on phones it advertised as free. *Id.* The plaintiffs argued that the "arbitration agreement was unconscionable and unlawfully exculpatory under California law because it disallowed classwide procedures." *Id.* at 1745. In doing so, they relied on the California Supreme Court's decision in *Discover Bank v. Superior Court*, 36 Cal. 4th 148 (2005), which held:

> [W]hen the [class action] waiver is found in a consumer contract of adhesion in a setting in which disputes between the contracting parties predictably involve small amounts of damages, and when it is alleged that the party with the superior bargaining power has carried out a scheme to deliberately cheat large numbers of consumers out of individually small sums of money, then . . . the waiver becomes in practice the exemption of the party "from responsibility for [its] own fraud, or willful injury to the person or property of another." Under these circumstances, such waivers are unconscionable under California law and should not be enforced.

*Concepcion*, 131 S. Ct. at 1745-46. In evaluating whether the *Discover Bank* rule interfered with federal law, the U.S. Supreme Court found that "[r]equiring the availability of classwide arbitration interferes with fundamental attributes of arbitration and thus creates a scheme inconsistent with the FAA." *Id.* at 1748. The Court therefore held that the *Discovery Bank* rule was preempted by the Federal Arbitration Act. *Id.* at 1753.

In this case, Defendant reads *Concepcion* as rejecting an unconscionability defense to an arbitration clause and thus requiring courts to enforce these agreements. Mot. at 8. Plaintiff, on the other hand, interprets *Concepcion* as holding that a "state cannot construe a generally applicable contract defense doctrine in a manner which disfavors arbitration of disputes and, thereby, conflicts with federal policy." Opp'n at 14. Plaintiff further argues that the Court "did not categorically exclude traditional reliance on generally applicable contract defenses, including unconscionability, to

8

the question of enforceability of an arbitration clause." *Id.* After carefully reviewing *Concepcion*, the Court agrees with Plaintiff's reading of its holding.

It is undisputed that at the core of *Concepcion* is the principle that a state law that prohibits the arbitration of claims is preempted by the FAA. *Id.* at 1747. When the state law conflicts with the overarching purpose of the FAA, which is to ensure the enforcement of arbitration agreements so as to facilitate streamlined proceedings, federal law demands preemption. *Id.* at 1748. However, generally applicable legal doctrines – such as duress or unconcionability – that may be applied in a manner disfavoring arbitration require a more careful analysis. *Id.* at 1747. Section 2 of the FAA allows courts to declare an arbitration agreement unenforceable "upon such grounds as exist at law or in equity for the revocation of any contract." *Id.* at 1746 (citing 9 U.S.C. § 2) (internal quotations omitted). "This saving clause permits agreements to arbitrate to be invalidated by 'generally applicable contract defenses, such as fraud, duress, or unconscionability,' but not by defenses that apply only arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue." *Id.*

The Court in *Concepcion* identified a number of examples illustrating the types of prohibitive state law rules classifying arbitration agreements as unconscionable. *Id.* at 1747. For instance, rules declaring unconscionable an arbitration agreement that fail to abide by the Federal Rules of Evidence, or fail to provide for judicially monitored discovery, are contract defenses that "rely on the uniqueness of an agreement to arbitrate" and are therefore in direct conflict with the FAA. *Id.* Such rules, which classify arbitral agreements as unconscionable by virtue of the agreement not providing for certain rights, have been found to be anti-arbitration. *Kanbar v. O'Melveny & Myers*, No. C-11-0892, 2011 WL 2940690, at *9 (N.D. Cal. July 21, 2011) (concluding that "a rule is anti-arbitration if it 'interferes with [the] fundamental attributes of arbitration'– in particular, its informality, expeditiousness, and relative inexpensiveness.") (citing *Concepcion*, 131 S. Ct. at 1748) (brackets in original). However, Defendant's argument that *Concepcion* rejected an unconscionability defense to arbitral agreements as conflicting with a federal purpose is misplaced. In overruling the *Discover Bank* rule, the Supreme Court sought to preempt state laws that categorically defined an arbitration

agreement as unconscionable. *See Concepcion*, 131 S. Ct. at 1748 (noting that the saving clause in FAA § 2 preserves generally applicable contract defenses); *see also Kanbar*, 2011 WL 2940690, at *9 (holding that an "unconscionability determination based on state law is not preempted by the FAA"); *Sanchez v. Valencia Holding Co., LLC*, No. B228027, 2011 WL 5027488, at *7 (Cal. App. Oct. 24, 2011) ("[W]e note that *Concepcion* does not preclude the application of the *Armendariz* principles to determine whether an arbitration provision is unconscionable."). California's unconscionability defense, codified in California Civil Code section 1670.5, does not create a per se rule invalidating arbitration clauses, but instead looks more generally to the facts and circumstances of each case to determine whether a contract is unconscionable. Even after the Court's decision, "[t]he doctrine of unconscionability can override the terms of an arbitration agreement and the parties' expectations in connection therewith." *Kanbar*, 2011 WL 2940690, at *6. Accordingly, *Concepcion* does not affect the traditional analysis used to determine whether an arbitration clause is unconscionable.

1. <u>General Principles</u>

Under California law, courts may refuse to enforce a contract where, at the time of its formation, it was unconscionable, or may limit the application of any unconscionable clause. Cal. Civ. Code § 1670.5(a). A finding of unconscionability has both a procedural and substantive component. *Armendariz v. Found. Health Psychcare Servs., Inc.*, 24 Cal. 4th 83, 114 (2000). While procedural unconscionability focuses on the element of "'oppression' or 'surprise' due to unequal bargaining power," substantive unconscionability centers on "'overly harsh,' or 'one-sided' results." *Id.* Both components must be present before a court may refuse to enforce a contract. *Id.* However, they need not be present to the same degree; "the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa." *Id.*

2. <u>Procedural Unconscionability</u>

Plaintiff argues that the arbitration agreement is procedurally unconscionable because it was "1) found in an adhesive, form contract; 2) never a topic of negotiation between Mr. Lau and the

10

1  selling dealership; 3) presented to Mr. Lau on a take-it-or-leave-it basis; 4) never discussed or
2  mentioned by the dealership representative; 5) buried within the prolix of a form contract's pre-
3  printed terms; and 6) not clearly disclosed in a prominent manner which would place the buyer on
4  notice." Opp'n at 15-18.  Defendant contends that there is no showing of oppression or unfair
5  surprise because Mr. Lau had a meaningful opportunity to negotiate – yet chose not to – and he
6  acknowledged by signature that he read the purchase agreement prior to signing it.  Mot. at 10-11.  It
7  further argues that contracts of adhesion are fully enforceable by their terms.  Reply at 4-5.  The
8  Court, however, agrees with Plaintiff.

9        The procedural component of unconscionability focuses on two factors: oppression and
10 surprise.  *Armendariz*, 24 Cal. 4th at 114.  "'Oppression' arises from an inequality of bargaining
11 power which results in no real negotiation and 'an absence of meaningful choice,' [whereas]
12 '[s]urprise' involves the extent to which the supposedly agreed-upon terms of the bargain are hidden
13 in a prolix printed form drafted by the party seeking to enforce the disputed terms." *Bruni v. Didion*,
14 160 Cal. App. 4th 1272, 1288 (2008).  Although *Concepcion* made clear that consumer contracts are
15 typically adhesive in nature, 131 S. Ct. at 1750, "California law treats contracts of adhesion, or at
16 least terms over which a party of lesser bargaining power had no opportunity to negotiate, as
17 procedurally unconscionable to at least some degree." *Bridge Fund Capital Corp. v. Fastbucks*
18 *Franchise Corp.*, 622 F.3d 996, 1004 (9th Cir. 2010).

19       In this case, the Court is able to find both elements of oppression and surprise, which renders
20 the arbitration agreement procedurally unconscionable.  Mr. Lau asserts that when he was given the
21 purchase agreement, it was presented to him on a take-it-or-leave it basis and was not afforded an
22 opportunity to negotiate any of the pre-printed terms on the form.  Lau Decl. ¶6, Dkt. No. 19-1.  In
23 the approximately twenty to thirty minutes that Mr. Lau took to sign the agreement, the dealership
24 representative directed his attention to the front side of the form, which was the only area where a
25 signature was required.  *Id.* at ¶4.  Despite the header at the top of the RISC which reads "LAW 553-
26 CA-ARB 1/07," Mr. Lau was never informed that "ARB" meant to designate the form as including
27 an arbitration clause nor that the RISC contained an arbitration clause located on the back-side of the
28

11

1 form. *Id.* at ¶¶6-10; Universal Decl. Ex. A.

2 Defendant maintains that there was no surprise because the arbitration clause was prominently
3 displayed on the back-side of the form in a box titled "ARBITRATION CLAUSE," and that Mr. Lau
4 nonetheless signed next to a paragraph mentioning the arbitration clause. Mot. at 10-11. The Court
5 is unpersuaded. The location of an arbitration clause on the back of a dense pre-printed form where
6 the purchaser is not required to sign does relatively little to notify the consumer that such clause
7 exists. Although the paragraph on the front mentions the arbitration clause on the back, the language
8 lies imbedded inconspicuously within a paragraph of the same font size, and on the opposite side of
9 the page where the Mr. Lau's signature was required. *See* Universal Decl. Ex. A, Dkt. No. 18-1. Mr.
10 Lau's failure to notice the reference to the arbitration clause on the front side of the agreement was a
11 result of the term being "hidden in a prolix printed form drafted by the [the defendant]." *Bruni*, 160
12 Cal. App. 4th at 1288; *Sanchez*, 2011 WL 5027488, at *8 (noting that the "failure to read the contract
13 helps 'establish actual surprise'").

14 Furthermore, Defendant's assertion that Mr. Lau had every opportunity to negotiate, and in
15 fact did so prior to the date of purchase, is unconvincing. Mot. at 9. Although Mr. Lau concedes that
16 he was able to negotiate with the dealership as to the price of the vehicle, there is no support that such
17 negotiations extended to the pre-printed terms in the RISC, particularly when the agreement was
18 shown to Mr. Lau once negotiations had ceased and a price had been determined. Lau Decl. ¶4.
19 Unlike his negotiation of the price terms, Mr. Lau was never offered an opportunity to negotiate the
20 inclusion or exclusion of specific pre-printed terms. *See Sanchez*, 2011 WL 5027488, at *8 (finding
21 procedurally unconscionable an arbitration clause in a RISC where the plaintiff had no opportunity to
22 negotiate its terms).

23 Based on the above, the Court finds that the arbitration provision was procedurally
24 unconscionable because the agreement was oppressive and created unfair surprise on the Plaintiff.

25     3. <u>Substantive Unconscionability</u>

26 Plaintiff next argues that the arbitration clause is substantively unconscionable for four
27 reasons: (1) the cost of arbitration is prohibitively high; (2) the appeal provision unjustly favors

28

Defendant and deprives Mr. Lau of any meaningful opportunity to appeal; (3) selection of the arbitral forum is within the control of the Defendant; and (4) Defendant is able to pursue a self-help remedy of repossession while Mr. Lau has no comparable non-arbitrable remedies available. Opp'n at 18-21. Defendant responds that the arbitration costs are not prohibitively high because Mr. Lau will not have to advance fees due to the industry's practice of taking lemon law litigation on a contingency basis. Mot. at 12. The Court agrees with Plaintiff.

"Substantive unconscionability centers on the 'terms of the agreement and whether those terms are so one-sided as to shock the conscience.'" *Ingle v. Circuit City Stores, Inc.*, 328 F.3d 1165, 1172 (9th Cir. 2003). An arbitration provision is substantively unconscionable if it is "overly harsh" or generates "'one-sided' results." *Armendariz*, 24 Cal. 4th at 114. This can be shown if the disputed provisions of the agreement fall outside the "'reasonable expectations' of the non-drafting party or is 'unduly oppressive.'" *Sanchez*, 2011 WL 5027488, at *10. In evaluating the terms of the contract, courts must analyze the contract at the time both parties agreed to be bound. *Ingle*, 328 F.3d at 1172.

Here, Defendant asserts that Mr. Lau's rights are not harmed because he would not have to advance any fees as a result of his attorney taking the case on a contingency basis. Reply to Mot. at 6-7. Notwithstanding the fact that it may be customary to take lemon law cases on contingency, Defendant has not shown that Mr. Lau's counsel is in fact advancing court costs. Defendant attempts to prove this by way of example using an attorney declaration in an unrelated case involving Plaintiff's firm, (Reply at 6-7); however, there is nothing to suggest that the advance of all costs is standard practice for the firm. In order for Mr. Lau's claim to be heard in arbitration, he would have to advance: (1) one-half of the arbitrator's hourly fee based on a reasonable estimate of time required to hear the matter; (2) an administrative initial filing fee in the amount of $4,350.00; (3) a final fee in the amount of $1,750.00 to proceed to a hearing; and (4) additional fees for the arbitrator's preparation, research, and writing of the opinion. Chae Decl. ¶¶6-10, Ex. C, Dkt. No. 19-2; Opp'n at 19. These amounts are in stark contrast to pursuing litigation in federal court where Plaintiff would only have to pay a filing fee of $350. "[I]t is substantively unconscionable to require a consumer to give up the right to utilize the judicial system, while imposing arbitral forum fees that are

1  prohibitively high." *Gutierrez v. Autowest, Inc.*, 114 Cal. App. 4th 77, 90 (2003). Because Mr. Lau
2  will have to advance between $10,000 and $15,000 under the AAA rules to arbitrate his claims, (*see*
3  Chae Decl. ¶10, Ex. C), the Court finds the arbitration agreement substantively unconscionable.
4       Next, the appeal provision in the arbitration clause imposes costs more prohibitive than the
5  initial hearing and severely limits the consumer's ability to appeal. The provision states,

> The arbitrator's award shall be final and binding on all parties, except that in the event
> the arbitrator's award for a party is $0 or against a party is in excess of $100,000 . . .
> that party may request a new arbitration under the rules of the arbitration organization
> by a three-arbitrator panel. The appealing party requesting new arbitration shall be
> responsible for the filing fee and other arbitration costs . . . .

Universal Decl. Ex. A. Defendant argues that the FAA preempts any limitations on state statutory rights, and the fact that Plaintiff's right to receive damages under California Civil Code section 1794(b) is impaired does not invalidate the arbitration clause. Reply at 8-9. However, Defendant does little to explain why the appeal provision is not unconscionable. Pursuant to the arbitration clause, Mr. Lau would only be entitled to appeal the decision of an arbitrator if his award was $0 or in excess of $100,000. Universal Decl. Ex. A. Although such a provision may seem to apply evenhandedly, its practical effect cuts in favor of Defendant. California Civil Code section 1794(b) provides Mr. Lau with a remedy of either replacement or reimbursement. Given that the measure of damages for reimbursement is in excess of $100,000 (Compl. at 4), an award of less than that amount would leave Mr. Lau unable to recover the amount he is statutorily entitled to, while the Defendant would be able to appeal a full reimbursement. Thus, Mr. Lau would effectively only exercise his right to appeal if the arbitrator awarded him $0. Despite Defendant's assertion that the arbitration clause provides a "modicum of bilaterality," (Mot. at 11), "[a] truly bilateral clause would allow a *buyer* to appeal an award *below $100,000*." *Sanchez*, 2011 WL 5027488, at *12 (holding unconscionable a consumer arbitration clause that granted appeal rights only when the arbitration award was $0 or above $100,000) (emphasis in original).

     Furthermore, if Mr. Lau were to exercise his right to appeal, the costs required to be advanced would be even higher than those in the initial hearing. The arbitration clause provides that the appealing party "shall be responsible for the filing fee and other arbitration costs subject to a final

14

determination by the arbitrators of a fair apportionment of costs." Universal Decl. Ex. A. In other words, Mr. Lau as the appealing party would be required to advance all costs, and any reimbursement from the other party would come only after a decision has been entered. Given that an appeal is heard in front of a three-arbitrator panel, the costs associated with the appeal would multiply to cover 100% for each arbitrator. If a consumer had difficulty advancing costs in the initial hearing, then he or she would have an even more difficult time advancing the costs for appeal. Such a provision places an unduly harsh burden on consumers and further discourages them from enforcing their rights. *Sanchez*, 2011 WL 5027488, at *15 (noting that in order to overcome a substantive unconscionability challenge, "the [arbitration] agreement must provide some effective avenue for relief from unaffordable fees."). Taking the foregoing into account, the Court finds that the appeals provision also renders the arbitration agreement substantively unconscionable.

Taken together, the Court finds that Plaintiff has sufficiently demonstrated that the arbitration clause in the RISC is both procedurally and substantively unconscionable. As a result, the arbitration agreement is unenforceable and Defendant's request to compel arbitration should be denied.

## IV. CONCLUSION

Based on the analysis above, the Court hereby **DENIES** Defendant's Motion to Compel Arbitration (Dkt. No. 16).

**IT IS SO ORDERED.**

Dated: January 31, 2012

_____
Maria-Elena James
Chief United States Magistrate Judge